ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Lulus Ostrich Ranch | ) ASBCA Nos. 59252, 59450 |
| | ) |
| Under Contract Nos. 48695390, 48695391 | ) |
| 48695490, 48695290 | ) |

APPEARANCE FOR THE APPELLANT:      Mr. William R. Hayward
     Owner

APPEARANCES FOR THE GOVERNMENT:      Daniel K. Poling, Esq.
     Chief Trial Attorney
     Robin Walters, Esq.
     Trial Attorney
     DLA Disposition Services
     Battle Creek, MI

OPINION BY ADMINISTRATIVE JUDGE STEMPLER
ON APPELLANT'S MOTION TO STAY PAYMENTS AND
APPELLANT'S MOTION TO STAY TERMINATION OF CONTRACT

Lulus Ostrich Ranch (appellant) has requested the Board grant its 29 July 2014 Motion to Stay Payments to order the Defense Logistics Agency Disposition Services (DLA or the government) to forbear from collecting payments, both disputed and undisputed, allegedly owed by appellant under the four referenced government sales contracts for the disposition of scrap metal. Appellant has also requested the Board grant its 17 August 2014 Motion to Stay Termination of Contract and order the government to refrain from terminating appellant's four referenced contracts. We deny appellant's motions.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

1. The government issued Invitation for Bid No. 39-3606 (IFB) for the sale and removal of scrap property, defined in the solicitation as "property that has no value other than i[t]s basic material content" (R4,[1] tab 1 at 1, 4). The IFB identified four discrete categories of scrap to be sold and removed: "Metallic/Non-Metallic Scrap with Required Demilitarization and/or Mutilation Performed by the Purchaser"; "Metallic/Non-Metallic Scrap Vehicles and Vehicular Related with Required Demil[itarization] and/or Mutilation Performed by the Government";

---

[1] All Rule 4 cites are to the Rule 4 filed in ASBCA No. 59252 unless otherwise noted.

"Metallic/Non-Metallic Scrap Non-Vehicular Related With Required Demilitarization and/or Mutilation Performed by the Government"; and "Deformed Brass Scrap" (R4, tab 1 at 4).

2. The IFB contained "Conditions of Sale," incorporated by reference, terms and conditions set forth in DLA Disposition Services pamphlet *Sale by Reference, July 2012,* available "from the DLA Disposition Services Web site, www.dispositionservices.dla.mil" (R4, tab 1 at 12). One of the terms incorporated by reference was a "Default" provision, Condition No. 9 of Part 2, "General Sale Terms and Conditions," which provided in pertinent part:

> If, after the award, the Purchaser breaches the contract by failure to make payment within the time allowed by the contract as required by Condition No. 6 [Payment], or by failure to remove the property as required by Condition No. 8 [Delivery, Loading, and Removal of Property], then the Government may send the Purchaser a 15-day written notice of default (calculated from date of notification), and upon Purchaser's failure to cure such default within that period (or such further period as the Contracting Officer may allow) the Purchaser shall lose all right, title, and interest which he/she might otherwise have acquired in and to such property as to which a default has occurred.

(*Sale by Reference* at 6-7, http://www.dispositionservices.dla.mil/sales/Pages/forms-references.aspx) Another of the terms incorporated from Part 2 of the *Sale by Reference* pamphlet was Condition No. 33, "Disputes," which provided that [a]ny contract awarded as a result of this sale is subject to the Contract Disputes Act [of] 1978" (CDA), 41 U.S.C. §§ 7101-7109 (*id.* at 16).

3. The "Conditions of Sale" section of the IFB also contained the following pertinent provisions:

> **ARTICLE PC:  FAILURE TO PERFORM.**
> Notwithstanding the provisions of Condition 7 of Part 4, Special Sealed Bid Term Conditions of the DRMS pamphlet "Sale by Reference", July 2012, entitled "Failure to Perform", the U.S. Government shall be entitled to retain or collect as liquidated damages a sum equal to 20% of the contract price for the quantity estimated to be generated within a 60-day period.
>
> ....

2

**ARTICLE PF: TERMINATION.**
> Notwithstanding the provisions of Condition 6 of Part 4, Sale of U.S. Government Property Special Sealed Bid-Term Conditions (Standard Form 114C-2, Jan 70) of DLA Disposition Services pamphlet "Sale by Reference", July 2012, this contract may be terminated by either party without cost to the U.S. Government upon 60 days written notice to the other, to be calculated from the date the notice is mailed. The U.S. Government may or may not require additional removals during this time frame.

(R4, tab 1 at 14)

4. On 21 January 2014, the government awarded appellant the following contracts for the sale and removal of: scrap requiring demilitarization and/or mutilation for a price of $0.5/lb (Contract No. 48695390); vehicle-related scrap and scrap tires for $0.6/lb (Contract No. 48695391); miscellaneous, non-vehicular scrap for $0.6/lb (Contract No. 48695490); and scrap consisting of fired, deformed, and incinerated brass for $6/lb (Contract No. 48695290). Each contract contemplated the sale and removal of a minimum of 40,000 lbs of scrap and referred to the IFB for contract maximums, complete descriptions of the various kinds of scrap, and other contract terms and conditions including those discussed above. (R4, tab 8)

5. Subsequent to award of the contracts, appellant sent the government an email, dated 3 February 2014, alleging that its bid price was "off by one dismal [sic] point (e.g., .60 should have been .06/lbs)" (R4, tab 10 at 1).

6. By email dated 9 February 2014, appellant requested that its bid price for removal of deformed brass scrap be modified either to its bid prices for removal of scrap requiring demilitarization/mutilation, vehicular scrap and tires, or miscellaneous non-vehicular scrap, or else to $0.9/lb. The government responded, by email dated 10 February 2014, that the price for removal of deformed brass was "set," and that the government "cannot change prices to another bid item." (R4, tab 11 at 1, 2)

7. Appellant then informed the government, by email dated 10 February 2014, that the mistake in its bid price was due to a math error that occurred when converting the prices per kilogram to the prices per pound (R4, tab 12 at 1). Appellant alleged that, but for the conversion error, its prices per pound should have been $0.10/lb for scrap requiring demilitarization/mutilation; $0.12/lb for vehicular scrap and tires; $0.12/lb for miscellaneous non-vehicular scrap; and $1.2372/lb for deformed brass scrap (R4, tab 12 at 5).

3

8. The sales contracting officer (SCO) issued a final decision denying appellant's claim for a price adjustment by email dated 10 February 2014 (R4, tab 13).

9. On 9 April 2014, appellant timely appealed from the SCO's 10 February 2014 final decision. The Board docketed the appeal as ASBCA No. 59252.

10. By email dated 22 May 2014, appellant submitted a certified claim to the SCO requesting either "a refund amount of $244,912...or [to] adjust bid prices to reflect [the] original work sheet" (ASBCA No. 59450 (59450), R4, tab 2 at 5, 6).

11. By letter dated 22 July 2014, the SCO issued a final decision denying appellant's 22 May 2014 certified claim (59450, R4, tab 3).

12. On 25 July 2014, appellant appealed from the SCO's 22 July 2014 final decision. The Board docketed the appeal as ASBCA No. 59450.

13. On 29 July 2014, appellant filed a "Motion to Stay DLA Payments." The government responded to appellant's motion to stay payments on 29 August 2014, and appellant replied on 7 September 2014.

14. By letter dated 16 August 2014, the SCO notified appellant:

> Per your default notice dated July 29, 2014, which provided a cure date of 13 August 2014, and in accordance with Part 4 Special Sealed Bid – Term Conditions, Paragraph 6, Termination, and Part 4 Paragraph 7 Failure to Perform, of the Sale by Reference pamphlet dated July 2012, this contract is **terminated effective September 16, 2014**.

(App. mot. dtd. 17 August 2014, ex. U2)

15. On 17 August 2014, appellant filed a "Motion to Stay DLA Termination of Contract." The government responded to appellant's motion to stay termination on 16 September 2014, and appellant replied on 28 September 2014.

16. On 24 September 2014, appellant appealed from the termination of its contracts. The Board docketed the appeal as ASBCA No. 59598.[2]

---

[2] It is not clear in the record of ASBCA Nos. 59252 and 59450 whether all four, or any of the contracts were actually terminated.

## DECISION

Appellant requests the Board to enjoin the government from taking collection action on payments allegedly owed to the government and also from terminating appellant's contracts. Both are beyond the scope of the Board's authority under the CDA. It is well established that the Board lacks jurisdiction to grant injunctive relief. *Raymond Kaiser Engineers, Inc./Kaiser Steel Corp., A Joint Venture*, ASBCA No. 34133, 87-3 BCA ¶ 20,140 at 101,944; *Applied Ordnance Technology, Inc.*, ASBCA Nos. 51297, 51543, 98-2 BCA ¶ 30,023 at 148,543 (the Board lacks jurisdiction over suits seeking to stay setoff or other collection of unliquidated progress payments); *Northrop Grumman Corp.*, ASBCA No. 52178 *et al.*, 01-1 BCA ¶ 31,374 at 154,916 (enjoining the government from taking collection action is beyond the Board's jurisdiction); *Texas Engineering Solutions*, ASBCA Nos. 53669, 54087, 03-2 BCA ¶ 32,272 at 159,660 (the Board has neither authority nor jurisdiction to grant injunctive relief); *Versar, Inc.*, ASBCA No. 56857, 10-1 BCA ¶ 34,437 at 169,959 (the Board lacks jurisdiction to grant injunctive relief).[3]

## CONCLUSION

Because we lack jurisdiction to grant injunctive relief, appellant's motions to stay payment and stay termination are denied.

Dated: 10 October 2014

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[3] We note that, although FAR Subpart 32.6 provides that "[a]ctions filed by contractors under the Disputes Clause shall not suspend or delay collection," FAR 32.607-2(a)(2), the office designated in agency procedures may authorize a deferment pending resolution of an appeal "to avoid possible overcollections," FAR 32.607-2(d), or for "small business concerns and financially weak contractors, balancing the need for Government security against loss and undue hardship on the contractor," FAR 32.607-2(e). We further note that the government, in its response to appellant's motion to stay payment, has expressed some willingness to work with appellant. The Board encourages such cooperative efforts by the parties.

5

I concur

ROBERT T. PEACOCK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59252, 59450, Appeals of Lulus Ostrich Ranch, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals